MARY K. STILLMAN *et al vs.* THEO. H. DAVIES *et al.*

APPEAL FROM DECISION OF THE CHANCELLOR.

OCTOBER TERM, 1885.

JUDD, C. J.; McCULLY and PRESTON, JJ.

Plaintiff, as widow of James Woods, continued to live at his homestead and had care of his children; she incurred a number of debts for the support of the children, to an extravagant amount, considering the circumstances of the estate.

Held, that defendants, as trustees of the estate, must pay the debts; they delegated their authority, as to incurring the liabilities, to her, and are estopped from objecting to the results.

OPINION OF THE FULL COURT.

UPON full consideration we see no reason to differ in respect to the principles applied and the facts found by the Chief Justice in this case, as more particularly set forth in his opinion.

The decree of the Court below is hereby affirmed.

*F. M. Hatch*, for complainants.

*Kinney & Peterson*, for defendants.

Honolulu, November 2, 1885.

DECISION OF THE CHANCELLOR, APPEALED FROM.

This is a bill in equity by the widow of the late James Woods, to compel the defendants, as executors and trustees of the estate of Woods, to pay the sum of $1,908 35, amounts paid and liabilities alleged to have been incurred by plaintiff from the time of the decease of Mr. Woods to 29th December, 1884.

The bill alleges that plaintiff had, during this period, the custody of the persons of the minor children, and was allowed by the executors to remain in charge of the homestead at Kohala, Hawaii, and that she made purchases and incurred liabilities for the proper clothing and maintenance of the minors, in supplies for the household and in making alterations in the house on the premises, which had been projected by her husband in his lifetime, and which was done with the knowledge and consent of one of the

executors. The equity of the bill is founded upon the principle of avoiding circuity of action and a multiplicity of suits.

The position of the defendants is that it was agreed and understood between them and plaintiff that she should be paid a reasonable allowance for the proper maintenance of the minors, but that plaintiff has made many unnecessary, useless, improper and extravagant purchases, and they have already paid her a reasonable allowance for the support of the minors, amply sufficient to cover all reasonable and necessary expenses, and they never agreed to become liable for such expenditures as she should make, etc.

It is not contended that the specific articles which were purchased by plaintiff, and which she seeks to have paid by defendants, are in themselves improper. They are mainly for clothing for the minors and for food consumed in the household. But that during the period when these purchases were made an excessive and extravagant amount was expended. This I find to be true. By the summary submitted Mrs. Woods expended for support of her children at the homestead, from November 29, 1883, to November 29, 1884, the sum of $4,998 11, or at the rate of $416 51 per month, exclusive of bills for board and education for children not at the homestead. For six months of 1885, for the same purpose, there was expended under a governess at the rate of $232 26 per month. If the amount now in contention be added to the expenses for 1884, it would bring the cost of supporting the children to nearly $600 per month, which I do not hesitate to say is an extravagant amount.

But the executors allowed her to remain at the house, to provide for the household, and for some months paid all orders and bills that were presented, charging them up to the estate and leaving their apportionment to the debit of the widow or the minors for future adjustment. In a previous hearing in this estate these amounts were apportioned and Mrs. Woods was charged with her share, which was deducted from her allowance for dower. The executors were aware that expenditures were being made and liabilities incurred at an extravagant rate, out of proportion to the income of the estate of Mr. Woods, but the amount was not known to them. Mrs. Woods says she was not aware of the condition of the estate, nor was she limited in the amount which she was au--

thorized to expend. A letter from Mr. Davies, 9th April, 1884, urged economy upon her and the necessity of naming a regular amount with which to keep the children and the house, and asking: "If you think $100 per month, besides the wages for men, will be enough, I will write to Mr. Burchardt, the ranch book-keeper and cashier;' but it should be a regular amount, as he must have definite instructions." Mrs. Woods made no reply to this. Mr. Davies endeavored to reach a definite settlement through Mr. Parker, plaintiff's brother, but was unsuccessful, and thus affairs ran on until December, 1884, when Mrs. Woods' marriage and removal to Honolulu necessitated her release of the control of the household.

What is the duty of the Court in respect to these claims ?

The amount is far in excess of what was necessary and proper for the maintenance of the minors, and the Court should guard their property from spoliation. But the right of the creditors must be considered. Mrs. Woods was left with general authority to contract for supplies and clothing. Mr. Davies' letter indicates this. He says: "The clothing and pocket money had better come through you." It was quite within the power of the executors to put a definite limit to the amount which Mrs. Woods was authorized to expend. In fact, when lavishness in expenditure on Mrs. Woods' part was suspected it was the executors' duty to stop it, either by withdrawing all credit and providing her with only sufficient ready money, or by naming a stated sum per month, which they would be responsible for, and warning her that any amount over this would not be paid. Mrs. Woods was not one of the executors or trustees, but the defendants were, and were responsible for the expenditures. They attempted to delegate their authority in this respect to her. By so doing they have now estopped themselves from objecting to the amounts.

I think the prayer of the bill should be granted. Let the claims be referred to Mr. Henry Smith, Deputy Clerk, for computation, and on the coming in of his report a final decree will be made.

*F. M. Hatch*, for plaintiffs.

*Kinney & Peterson*, for defendants.

Honolulu, September 29, 1885.